UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------

|  |  |  |
|---|---|---|
| STYLIANOS PROKOPIOU, | X : : | |
| Plaintiff, | : : | 06 CV 2558 (KNF) |
| -against- | : : | **DEFENDANT'S LOCAL RULE 56.1 STATEMENT** |
| THE LONG ISLAND RAILROAD COMPANY, | : : : : | |
| Defendant. | : X | |

-------------------------------------------------------

Defendant The Long Island Rail Road Company ("LIRR") submits the following

statement, pursuant to Local Rule 56.1, of the material facts as to which there is no genuine

issue to be tried.

1.    Plaintiff Stylianos Prokopiou is of Cypriot Greek origin. [Prokopiou Dep. 20.][1]

2.    Prokopiou began employment with The Long Island Rail Road Company

("LIRR") on October 18, 2000. [Compl. ¶ 12; Prokoiou Dep. 26.] He began as an electrician

and was represented by the International Brotherhood of Electrical Workers ("IBEW").

[Prokopiou Dep. 24, 25.]

3.    In 1992, approximately eight years before Prokopiou began his employment,

the LIRR and the IBEW signed a letter of understanding regarding the procedure under which

---

[1]  References to pages from Prokopiou's deposition transcript are designated herein as
"Prokopiou Dep. ___;" references to paragraphs in Prokopiou's complaint, which is annexed
hereto as Exhibit A, are designated herein as "Compl. ¶ ___;" references to paragraphs in the
declarations of Michael Chirillo and Brian K. Saltz are designated herein as "Chirillo Decl. ¶
___" and "Saltz Decl. ¶ ___," respectively.

electricians would be permitted to take the Electronics Test. [Chirillo Decl. ¶ 3; Exhibit B,

annexed thereto.]

4.     The letter of understanding provided in relevant part:

"When an electrician who is not listed as being qualified makes application (bids) for a
position in the Electronics Shop, the procedure as set forth below will be followed:

[1]     As soon as it is determined by the M of E [Maintenance
of Equipment] Department that an unqualified applicant
will be awarded a position in the Electronics Shop, each
applicant who has not already received one will be given a
copy of the book entitled 'Getting Started in Electronics,'
and two handouts entitled IBM PC DOS & Intro to IBM
PC and a copy of this Agreement.  Notification of where
a copy of the aforementioned handouts can be obtained
will be included in the Job Description posted on the
bulletin.

[2]     Each applicant will be given a test consisting of four (4) parts as
set forth.  In items 3(a), (b), and (c) below, tests will be
conducted after employee reports to the Electronics Shop and has
physically completed five (5) working days.  Employee will be
tested on sixth working day, unless parties mutually agree to
extend testing period.  Applicant will be notified of testing
requirement in the Job Description posted on the bulletin.  The
fourth part will be set forth in item 7A."

[Exhibit B, 1st page.]

5.     Thus, according to the letter of understanding, the electrician was first required

to bid for and be awarded a position prior to taking the Electronics Test.   [Chirillo Decl. ¶ 4.]

6.     Prokopiou also understood that the procedure occurred in the following

sequence: first, an employee was awarded a job; next, the employee received a pay raise; and

finally, the employee took the Electronics Test. [Prokopiou Dep. 48.]

7.     If the employee did not pass the Electronics Test, he lost the awarded position.

[Prokopiou Dep. 48.]

8.     This procedure applied to every employee in the Electronics Shop and the Maintenance Department, where Prokopiou alleged that he reports. [Prokopiou Dep. 48-49, 53-54.]

9.     The LIRR and the IBEW agreed to this procedure so that the LIRR would not waste time and money giving tests, and the employees would not waste time taking tests, which would not provide the employees with any promotion or economic benefit. [Chirillo Decl. ¶ 5.]

10.     The procedure was not based upon an employee's national origin and did not apply only to people of Greek origin. [Prokopiou Dep. 49, 54.]

11.     In order to be awarded a position, which was the first step of the procedure described in the letter of understanding, an employee was required to bid successfully for the position. The award was based completely upon seniority. [Prokopiou Dep. 29-30, 49-50.]

12.     Employees were not required to take the Electronics Test before bidding on a position. [Prokopiou Dep. 44-45.] Further, passing the Electronics Test had no bearing upon whether an employee's bid was successful. [Prokopiou Dep. 50.]

13.     Prokopiou was never prevented from bidding for a position. [Prokopiou Dep. 45.] Nor was anyone with less seniority awarded a position for which he bid. [Prokopiou Dep. 87.]

14.     Further, Prokopiou was never prevented from succeeding on a bid because of his national origin. [Prokopiou Dep. 42.]

15.     In fact, Prokopiou successfully bid for a High Tech position in 2006. [Prokopiou Dep. 10, 12, 37; Exhibit C, annexed thereto.]

16.     In accordance with the letter of understanding between the LIRR and the IBEW,

Prokopiou took and passed the Electronics Test after he was awarded the High Tech position. [Prokopiou Dep. 10, 12, 47, 64.]

17.     Since March 2004, forty four employees (including Prokopiou) have successfully bid for High Tech positions and have taken the Electronics Test after being awarded the positions. [Chirillo Decl. ¶ 7; Exhibit C, annexed thereto.] Of those forty four employees, thirty employees (including Prokopiou) passed the test and retained their positions. Fourteen employees failed the test and lost the positions which they had been awarded. [Chirillo Decl. ¶ 7; Exhibit C, annexed thereto.]

18.     One employee -- Neil Holst -- took the Electronics Test without being awarded a position. [Prokopiou Dep. 56.] Prokopiou is unaware of any other individuals who took the test prior to being awarded a position. [Prokopiou Dep. 56, 59.]

19.     Prokopiou does not know whether someone at the LIRR simply made a mistake when permitting Holst to take the test. [Prokopiou Dep. 63.]

20.     In fact, when Prokopiou asked the Plant Engineer in his department why Holst took the Electronics Test and he had not, the Plant Engineer responded that it was "most probably an accident." [Prokopiou Dep. 72.]

21.     Holst did not receive any promotion or pay raise when he passed the test. [Prokopiou Dep. 62; Chirillo Decl. ¶ 9.]

22.     Nobody ever indicated to Prokopiou that his national origin caused him not to be permitted to take the test prior to bidding successfully for a position. [Prokopiou Dep. 56.]

23.     Nobody ever indicated to Prokopiou that his accent caused him not to be permitted to take the test prior to bidding successfully for a position. [Prokopiou Dep. 56.]

24.     In fact, no supervisor, or any employee, has ever said anything indicating an

4

unfavorable opinion of Prokopiou's national origin or accent. [Prokopiou Dep. 30.]

25.     Prokopiou filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging national origin discrimination. [Prokopiou Dep. 65; Saltz Decl. ¶ 5; Exhibit D, annexed thereto.] In its letter to Prokopiou accompanying its dismissal of the charge, the EEOC stated that "there is no evidence to indicate that your national origin ... played any role in this matter." [Prokopiou Dep. 66; Saltz Decl. ¶ 5; Exhibit E, annexed thereto.]

26.     When asked at his deposition if he believed "that the Equal Employment Opportunity Commission was correct that there was no evidence to indicate that your national origin played any role in you not being permitted to take the test," Prokopiou responded, "I would say yes with qualification." [Prokopiou Dep. 66-67.]

27.     While Prokopiou stated that he "can't find any other explanation" other than national origin for why he was not permitted to take the test and Holst was permitted, he then said it was possible that the LIRR simply liked Holst better. [Prokopiou Dep. 69.]

Dated:     Jamaica, New York
           November 19, 2007

                                        MARK D. HOFFER
                                        Vice President/General Counsel & Secretary
                                        Attorney for Defendant

                                        By: _Brian K. Saltz_____
                                            Brian K. Saltz (BS-5857)
                                        The Long Island Rail Road Company
                                        Law Department - 1143
                                        Jamaica Station
                                        Jamaica, New York 11435
                                        (718) 558-8277